UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **RUSSELL FAVORITE** | **CIVIL ACTION NO. 06-0149** |
| **VS.** | **SECTION P** |
| **CLOVIS TILLARY, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Russell Favorite on January 26, 2006. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC). He is incarcerated at the Richwood Correctional Center (RCC), Monroe, Louisiana and complains that he is being denied appropriate medical care and that he has been the victim of racial harassment. Plaintiff named RCC, its Owner and Chief Executive Officer Billy McConnell, Warden Clovis Tillary, Nurse Diane Louis, LDOC Secretary Richard Stalder, and Regional Warden Leroy Holiday as his defendants.[1] He prays for an order directing RCC to have plaintiff transported to LSU Charity Hospital in Shreveport for an x-ray or M.R.I. He also prays for an unspecified amount of monetary damages for "...pain and suffering, mental anguish, deliberate indifference, and refusing me proper medical attention..."

---

[1] Plaintiff named defendants Tillary, Louis (elsewhere spelled "Lewis"), RCC, and McConnell as defendants in the caption of his complaint. He named defendant Stalder as a defendant in an addendum identified as page 3 of the complaint. He named defendants McConnell, Holiday, Tillary, and Louis (Lewis) as defendants in Paragraph III of the complaint. [See Doc. 1-1, pp. 1, 3-4]

1

## STATEMENT OF THE CASE

On November 9, 2005, at approximately 1:30 p.m., plaintiff was standing on the top of his bunk bed cleaning the ceiling of his dormitory. He was using a cleaning rag and a bucket of cleaning solution. As he reached to clean the light fixture plaintiff lost his balance, slipped, and landed on his back on the floor.

Nurse Lewis, who was either on the scene, or summoned to the scene, asked plaintiff to explain what happened. Plaintiff advised her that he had just fallen from the top bunk. Lewis was skeptical. Nevertheless, plaintiff was placed on a back-board and transported first to the RCC medical department, and then to the LSU - E.A. Conway Medical Center in Monroe. After a three hour wait, plaintiff was examined by a nurse who obtained a history and who, according to plaintiff, then prescribed Motrin® 800 mg.[2] Plaintiff was then returned to RCC.

At 6 p.m. on the following day, November 10, plaintiff complained of back pain to Officer Reed during "pill-call" and the Motrin® was provided.

On November 14 plaintiff submitted a "Request Form" to Nurse Lewis. Plaintiff advised that the medication was not helping his pain. He claimed that his back was hurting more each day. Nurse Lewis responded to his request and advised plaintiff to continue taking the medication. She concluded by reminding plaintiff that she lacked the authority to change medication since it had been prescribed by a physician at the hospital. [See Doc. 1-1, p. 19]

On November 15 plaintiff submitted a second "Request Form" to Nurse Lewis. Plaintiff

---

[2] Motrin®, is a brand of ibuprofen, one of a class of nonsteroidal anti-inflammatory drugs (called NSAID); it is used to relieve the pain, tenderness, inflammation (swelling), and stiffness caused by arthritis. It is also used to reduce fever and to relieve headaches, muscle aches, menstrual pain, aches and pains from the common cold, backache, and pain after surgery or dental work. See Medline Plus, a Service of the National Institutes of Health, and the United States National Library of Medicine at
http://www.nlm.nih.gov/medlineplus/druginfo/drug_Mi.html

noted, "...Does taking Motrin for a long period of time mess up your stomach. Because I've been vommitting [sic] up an acid looking liquid and my stomach has been 'up-set' the past two (2) days and I've still been taking my meds." Lewis responded, "Yes it does, after a[n] extended period of time. If you are vomiting stop taking it!" [*id.*, p. 20]

On November 21st, plaintiff submitted a third "Request Form" complaining again about pain and vomiting. Plaintiff requested another hospital examination to obtain a different medication. Nurse Lewis advised plaintiff to take Tylenol®[3] instead of Motrin®. [*id.*, p. 21]

On November 26 plaintiff submitted a fourth "Request Form" complaining about pain and requesting help. [*id.*, p. 22]

On November 28 plaintiff submitted an Administrative Remedies Procedure (ARP) grievance to Assistant Warden Savage complaining about his pain and requesting an examination by a physician at a hospital [*id.*, p. 23-26]

On December 2nd plaintiff was summoned by Nurse Lewis to the RCC medical department. Nurse Lewis discussed plaintiff's grievance and advised him that she did not believe that he had an accident and she refused to send him to the hospital. Plaintiff signified his dissatisfaction on a "Response Form." According to plaintiff, Nurse Lewis then insulted his race and ethnicity and, raising her voice, called him "stupid." [*id.* 1-1, pp. 15-17]

On the same date, plaintiff wrote an appeal of the ARP for submission to the Secretary of the LDOC. [*id.* pp. 11-18]

---

[3] Tylenol® is a brand name for acetaminophen, a medication used to relieve pain and reduce fever. Unlike aspirin, it does not relieve the redness, stiffness, or swelling caused by rheumatoid arthritis. However, it may relieve the pain caused by mild forms of arthritis. This medicine is available without a prescription. See Medline Plus, a Service of the National Institutes of Health, and the United States National Library of Medicine, *supra*.

On December 12th Assistant Warden Savage responded to plaintiff's ARP and noted that as a result of the ARP plaintiff had been placed on sick call-out list. According to Savage, plaintiff was examined by the on duty nurse on December 8 and, "[t]he on duty nurse did assist you ... with your medical conditions, and followed the facility Physician's professional opinion..." Plaintiff's grievance was determined to be unfounded. [*id*., p. 27]

On January 16, 2006, plaintiff submitted another "Request Form" to the RCC medical department. He complained again of back pain and noted that he was not x-rayed when he was brought to the hospital for examination. He asked for a return visit to the hospital and for an x-ray examination. Nurse Lewis responded, "You have been sent to LSU-Monroe and according to the physician notes you don't have a follow-up appt. [appointment] And you were seen by the facility Dr. and he didn't refer you to the hospital. He stated that you didn't cooperate with him. Would you like to see his notes." [*id*., p. 28]

Plaintiff signed his complaint on January 24, 2006. It was received and filed on January 26, 2006.

## **LAW AND ANALYSIS**

### 1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

4

L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and the copies of his ARP Grievances specifically detail his theories of liability with respect to each named defendant. The thoroughness of the complaint convinces the court that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated

hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

## 2. Supervisory Officials

With the exception of Nurse Lewis, all of the remaining defendants are supervisory officials. Plaintiff suggests that these supervisory officials – Secretary Stalder, Mr. McConnell, Warden Tillary, and Warden Holiday – are liable because of their positions of authority.[4] It is well settled that supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*. *Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313 (5th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

To be liable under §1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998).

Plaintiff fails to make sustainable allegations which would establish supervisory liability on the part of these supervisory officials. To establish the personal liability of these defendants plaintiff must show that their personal action or inaction violated his civil rights. *Reimer v. Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir.1981). Plaintiff has alleged no facts to establish that these defendants were personally involved in the events that form the basis of his claims.

Further, plaintiff failed to allege that any of these defendants implemented a policy so

---

[4] Plaintiff alleged fault as follows, "...Billy McConnell owner/CEO at LaSall Mgt. and Leroy Holiday hired Warden Clovis Tillary and Nurse Diane Lewis. Is responsible for the persons and day-to-day operations of the personal [sic] at [RCC]." Doc. 1-1, paragraph IV. His sole allegation of fault with respect to Secretary Stalder concerned his employment as Secretary of the Department of Public Safety and Corrections. [*id.*, p. 3]

deficient that the policy itself acted as a deprivation of constitutional rights. Accordingly, plaintiff has failed to state a claim pursuant to § 1983 against Mr. McConnell, Warden Holiday, Warden Tillery, and Secretary Stalder.

### 3. Medical Care

At all times relevant to this analysis, plaintiff was a convicted prisoner. Therefore, his medical care claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment. In order to show an Eighth Amendment violation in this context, plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not made such a showing.

Deliberate indifference in the context of the failure to provide reasonable medical care to a prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122

7

F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff claims that he was injured on November 9th at 1:30 p.m. Despite some skepticism, Nurse Louis apparently conducted an examination of the plaintiff and ordered him transported to a nearby hospital for further examination and treatment. Plaintiff was apparently examined by a physician who prescribed Motrin® for plaintiff's pain; the physician apparently determined that there was no need for follow-up treatment. Plaintiff was provided the medication as ordered by the physician, and, when he began to experience stomach problems, an alternative pain reliever was recommended. Finally, although not alleged by the plaintiff, it appears that he was examined by the RCC facility physician at some point in time following his accident. According to this physician, plaintiff refused to cooperate. [See Doc. 1-1, p. 28]

Plaintiff has not shown that Nurse Lewis was aware of facts from which an inference of substantial risk of serious harm could be drawn; nor has he shown that she actually drew such an inference; nor that her response to plaintiff's complaints indicated that she subjectively intended that any harm occur to the plaintiff. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001). The record submitted by the plaintiff establishes only that he had a backache.

Plaintiff was apparently examined by Nurse Lewis, an unidentified nurse and physician at the hospital, and by an unidentified physician at RCC. None of these health care professionals noted any objective evidence of injury.

The plaintiff's allegations of fact do not reveal that he was ever subject to a "substantial risk of serious harm." Had plaintiff been in the "free world" it is unlikely that he would have received any more attention as a result of this apparently minor injury.

Finally, whether Nurse Lewis or any one else "should have perceived" a risk of harm to

8

plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). Plaintiff's complaint, taken as true, does not rise to this required level of indifference.

In short, plaintiff's claims concerning the denial of adequate medical care are frivolous and dismissal on that basis is recommended.

### 4. Insults

To the extent that plaintiff seeks compensation for the allegedly insulting behavior of Nurse Lewis, his claim fares no better. Claims of verbal abuse and harassment, while regrettable, are not actionable under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993).

### 5. Exhaustion

Finally, plaintiff's allegations concerning exhaustion of available administrative remedies are ambiguous or contradictory at best. He claims to have exhausted administrative remedies up to the level of the Secretary of the Department of Public Safety and Corrections, and he has provided a document purporting to be his appeal to the Secretary from the denial of ARP's which were submitted to the administration at the RCC.

He has not provided the response from the Secretary of the LDOC, nor has he alleged that the Secretary ignored his appeal. According to the procedures adopted by the LDOC, an inmate dissatisfied with the Warden's decision "... may appeal to the Secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on

9

the response form and forwarding it to the ARP Screening Officer within 5 days of receipt of the decision. A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. A copy of the Secretary's decision will be sent to the warden." See LR 28:857(G)(2)(a).

Plaintiff's appeal to the Secretary was dated December 2, 2005. However, the formal denial of his ARP by the Warden did not occur until December 12, 2005. Plaintiff does not otherwise explain how it came to be that his appeal pre-dated the Warden's denial of his grievance. In any event, it appears that plaintiff attached a copy of the Warden's denial as an exhibit to his appeal and designated the document as Exhibit G. [See Doc. 1-1, p. 27] Therefore, logic suggests that plaintiff did not submit his appeal to the Secretary of LDOC until December 12th at the earliest. According to the regulation cited above, the Secretary's decision must be made within 45 days of his receipt of the appeal. If the Secretary received the appeal on the day it was sent, December 12, 2005, then, the 45 day period would not have expired until January 25, 2006. As shown above, plaintiff signed, and therefore filed his complaint on January 24, 2006.

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e(a), which makes the exhaustion requirement mandatory in prison conditions cases, provides as follows:

> (a) Applicability of Administrative Remedies – <u>No action shall be brought</u> with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

Under current law, plaintiff must exhaust the administrative remedy procedure <u>before</u> proceeding herein. The statute provides for no exceptions. The jurisprudence interpreting the statute clearly mandates completion of the administrative remedies process <u>prior</u> to filing suit.

10

See *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (§1997e(a) "plainly requires that administrative remedies be exhausted <u>before</u> the filing of a §1983 suit, rather than while the action is pending ... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); See also *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled – that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

It appears that plaintiff filed his federal civil rights suit before the ARP process had been completed, and therefore, dismissal on that basis would also be appropriate.

### 6. Conclusion

Nevertheless, since it is apparent that plaintiff's claims are frivolous, dismissal on that basis is recommended. Should plaintiff object to this Report and Recommendation as provided below, he should include with his objection proof that he fully exhausted administrative remedies <u>prior</u> to filing suit.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties

aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 9th day of March, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE